NOT FOR PUBLICATION                                    (Doc. No. 137)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____     :
                                        :
KATHLEEN EGERSHEIM and                  :
CHRISTOPHER WOODS,                      :
                                        :
             Plaintiffs,                :          Civil No. 07-5116 (RBK/AMD)
                                        :
       v.                               :              **OPINION**
                                        :
LOUIS ANTHONIO GAUD, et al.,            :
                                        :
             Defendants.                :
_____     :

**KUGLER**, United States District Judge:

       This case involves the alleged usurpation of corporate opportunities by majority

shareholders in a closely held corporation.  Pro se Plaintiffs Kathleen Egersheim and Christopher

Woods ("Plaintiffs") bring eighteen common-law claims against Defendants Louis Anthonio

Gaud, Philip DiBartolo, Remix Entertainment Venture, and DAG Entertainment, Inc.

("Defendants").  Defendants move for summary judgment pursuant to Federal Rule of Civil

Procedure 56 as to fifteen of the claims.  For the following reasons, Defendants' motion for

summary judgment is **GRANTED**.

## I.      BACKGROUND

       This case involves a dispute between the former and current officers of DAG

Entertainment, Inc., f/k/a Digital Asset Group, Inc. ("DAG").  Second Amended Complaint

("SAC") ¶ 1.  DAG is a closely-held New Jersey corporation that develops "kid-friendly

entertainment programs and characters to media outlets."  Id. ¶ 3.  DAG was co-founded by

Plaintiff Christopher Woods ("Woods") and Defendant Luis Anthonio Gaud ("Gaud").  Id.  The

parties to this case are current or former officers of DAG.  "Woods holds a 22.5% shareholder interest in DAG and [formerly] held the position of Creative Director with the company."  Id. ¶ 4.  "Gaud is the largest individual shareholder of DAG, holding a 32.5% interest in the company, and is also . . . the former President, and was the sole full-time paid employee of DAG."  Id. ¶ 5. Plaintiff Kathleen Egersheim ("Egersheim") "holds a 3% shareholder interest in DAG and [formerly] held the positions of both Vice President and Assistant Secretary with the company." Defendant Philip DiBartolo ("DiBartolo") "holds a 15.33% shareholder interest in DAG and is the Chief Executive Officer and Treasurer of the company."  Id. ¶ 6.  "DiBartolo is also the named executor of the estate . . . of his deceased sister, Angela DiBartolo," which estate "currently holds a 16.33% shareholder interest in DAG."  Id.  Plaintiffs Wood and Egersheim held their posts as officers of DAG until they were voted out of their positions at a Board of Directors meeting on September 11, 2007.  Id. ¶¶ 3-4.

Plaintiffs allege that they are minority shareholders and that Defendants are majority shareholders in DAG.  This action arises out of Plaintiffs' allegation that Defendants abused their position as majority shareholders in the same corporation to "systematically misappropriate DAG's corporate assets" and "depriv[e] Plaintiffs of lucrative corporate opportunities."  Id. ¶ 2. Specifically, Plaintiffs allege that after DAG had been in business for some time, Defendants DiBartolo and Gaud established a second New Jersey corporation, Remix, LLC ("Remix"), which, "like DAG, develops . . . kid-friendly animated entertainment programs and characters to media outlets."  Id. ¶ 7.  Defendants allegedly used Remix to usurp a key corporate opportunity that DAG rightly had with The Comcast Company ("Comcast").

Plaintiffs allege that DAG recognized an opportunity to partner with Comcast in 2001. Id. ¶ 12.  DAG intended to create a new set of television programs that would take advantage of

Comcast's newly-developed Video-On-Demand ("VOD") network, and would potentially allow DAG to have its own channel on Comcast's network . Id.  Towards this end, Plaintiff Woods allegedly developed the character "Kidd Hero," who was intended to be "the first children's superhero of the VOD era." Id. ¶ 13.  On July 31, 2004, after over two years of development, Angela DiBartolo met with a Comcast representative to discuss developing a business relationship between DAG and Comcast.  Plaintiffs allege that Comcast expressed great interest in working with DAG, and scheduled a second meeting for August 25, 2004.  In preparation of this meeting, Plaintiff Egersheim allegedly created a marketing presentation for Kidd Hero.  Id. ¶ 14.  Plaintiffs allege that around this time, in furtherance of DAG's potential business venture with Comcast, Plaintiff Woods created the concept of "the Remix Generation," which describes the current youth culture's desire of customization and personalization.  Id. ¶ 17.

The key events that led to a falling out between the parties allegedly occurred in 2005.  Plaintiffs allege that Defendants had begun a "systematic dismantling of the collaborative nature of DAG by . . . excluding Plaintiffs from important discussions and decisions regarding the future of DAG." Id. ¶ 18.  Plaintiffs further allege that they repeatedly attempted to bring their concerns about their exclusion from DAG to Defendants, but that their concerns were ignored.  Id. ¶¶ 20-22.  It was around this time that Defendants allegedly created Remix, LLC, without the knowledge or consent of Plaintiff, and began using Remix to usurp DAG's corporate opportunities.  Id. ¶ 32.  Remix was eventually able to enter into a lucrative business opportunity with Comcast, pursuant to which the companies created a joint venture, the "Kabillion Kids Network." Id. ¶ 38.

Plaintiffs state that subsequent to Remix's success in entering the joint venture with Comcast, by early May 2007, Defendants had proposed to cease the day-to-day operations of

DAG.  Id. ¶ 41.  When Plaintiffs objected to this plan, Defendants allegedly decided to exclude

Plaintiffs from DAG.  Plaintiffs were voted out of their officer/director positions at DAG at a

Board of Directors meeting on September 11, 2007.  Id. ¶ 42.  Plaintiffs allege that subsequent to

this meeting, Defendants "essentially caused DAG to cease its business operations, and have sent

no further business information to Plaintiffs concerning DAG."  Id.  Plaintiffs allege that these

actions constitute unlawful usurpation of corporate opportunities at DAG, and accordingly

request damages and injunctive relief.

## II.    STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at

255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of

demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either

by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by

"'showing' – that is, pointing out to the district court – that there is an absence of evidence to

support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the

moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.  A party cannot oppose a motion for summary judgment by simply relying on the pleadings in its defense. Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### A.  Procedural Deficiencies in Plaintiffs' Opposition Filings

Plaintiffs have filed an opposition to Defendants' motion for summary judgment. However, all of the documents in Plaintiffs' opposition contain important procedural deficiencies.  The first deficiency concerns Plaintiffs' opposition brief.  This brief is 88 pages, a violation of Local Civil Rule 7.2.(b).[1]  Given that Plaintiffs never obtained permission to submit an overlength brief, pursuant to Rule 7.2(b), this Court is not required to consider Plaintiff's brief.  Moreover, Plaintiffs' brief contains no discussion of the relevant law and includes not a single citation to legal authority.  As discussed below, Plaintiffs' failure to oppose Defendants' legal arguments must be construed as a concession regarding Defendants' arguments of law.

Secondly, Plaintiffs have not certified that any of the 145 "Appendix" documents submitted with Plaintiffs' opposition are true and correct copies of the original documents.  This Court cannot consider unauthenticated or unverified documents in deciding a motion for summary judgment, because such evidence would not be admissible in trial.  See Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994) ("affidavits in support of summary judgment can be opposed by any *admissible* evidence") (emphasis added); Ricoh Co. v. Katun Corp., 380 F.Supp.2d 418, 437-438 (D.N.J. 2005) ("Evidence with a deficient foundation must be excluded from consideration" on a motion for summary judgment) (citing Williams v. Borough of West

---

[1] The Court noted this violation of L. Civ. R. 7.2(b) in the Court's October 4, 2011 letter to Plaintiffs.

Chester, Pa., 891 F.2d 458, 460 (3d Cir.1989)).  Since Plaintiffs have not produced any

admissible evidence to oppose Defendants' summary judgment motion, Plaintiffs are unable to

raise a genuine issue of fact.

       Thirdly, in Plaintiffs' opposition, Plaintiffs failed to submit a Statement of Material Facts

Not in Dispute required by Local Rule 56.1(a).[2]  Plaintiffs' failure to submit the Rule 56.1

statement is also in violation of Magistrate Judge Donio's April 12, 2011 Scheduling Order,

which expressly refers to Local Rule 56.1.  As such, Plaintiffs have failed to dispute Defendants'

Statement of Material Facts.

       Because Plaintiffs neither dispute Defendants' Statement of Material Facts, nor produce

any factual evidence in opposition to Defendants' motion for summary judgment, the Court

accepts all of the facts set forth in Defendants' Statement of Material Facts and Defendants'

authenticated and verified exhibits as true.  As explained below, the Court finds that Plaintiffs

have failed to raise any genuine issues of material fact to defeat Defendants' motion for

Summary Judgment.  The Court is further satisfied that Defendants have shown "that there is an

absence of evidence to support the nonmoving party's case."  See Celotex, 477 U.S. at 325.

### B.  Duplicative Claims in the Second Amended Complaint

       Plaintiffs assert the following common law claims in their Second Amended Complaint:

(I) breach of contract; (II) breach of fiduciary duty; (III) breach of implied covenant of good faith

and fair dealing; (IV) unjust enrichment; (V) tortious interference with prospective economic

advantage; (VI) civil conspiracy; (VII) constructive trust; (VIII) accounting; (IX) enforcement of

---

[2] Failure to submit such a Rule 56.1 Statement is an appropriate grounds to decline to consider Plaintiffs' opposition to Defendants' summary judgment motion. However, a court may excuse the failure to submit a Rule 56.1 Statement where there is no evidence of bad faith. See, e.g., Rumbas v. Borough of Lawnside, 2008 U.S. Dist. LEXIS 60712 (D.N.J.2008) (Simandle, J.); Shirden v. Cordero, 509 F.Supp.2d 461, 463–64 n .1 (D.N.J.2007) (Martini, J.).  For the purposes of this summary judgment motion, the Court finds that there is no evidence of bad faith on the part of Plaintiffs in failing to submit the Rule 56.1 Statement.  While the Court will overlook Plaintiffs' failure to include a Rule 56.1 Statement in this instance, the Court impresses upon Plaintiffs that the Court will not be so lenient in the future if Plaintiffs again fail to follow the applicable rules.

contract; (X) breach of contract; (XI) shareholder derivative claims for breach of fiduciary duty;
(XII) shareholder derivative claims for unjust enrichment; (XIII) shareholder derivative claims
for tortious interference with prospective economic advantage; (XIV) shareholder derivative
claims for tortious interference with contract; (XV) shareholder derivative claims for civil
conspiracy; (XVI) shareholder derivative claims for constructive trust; (XVII) declaratory
judgment with respect to corporate indemnification provisions; and (XVIII) minority shareholder
oppression.  See SAC ¶ 1.  Defendants argue that they are entitled to summary judgment as to
Counts I-VII, Counts X-XVI, and Count XVIII of the Second Amended Complaint because these
Counts are duplicative of each other and together allege a claim for violation of the Corporate
Opportunity Doctrine.  Defs. Reply br. at 10-11.

 In fifteen of Plaintiffs' eighteen Counts identified in Defendants' motion for summary
judgment, the Second Amended Complaint utilizes identical words to allege the same
substantive common law claim, namely, violation of the corporate opportunity doctrine.  See
SAC ¶¶ 12, 14, 15, 28, 34, 36 (alleging that "Defendants . . . usurped DAG's business
opportunity"); ¶ 45 (alleging that Defendants stole DAG's business opportunity); ¶ 57
("Defendants . . . divert[ed] . . . business opportunities of DAG and its shareholders to
themselves and/or other corporate entities"); ¶ 60 ("the Shareholder Defendants have diverted
corporate assets and business opportunities from DAG and its shareholders"); ¶ 64 ("Defendants
. . . sought to supplant Plaintiffs' opportunities"); ¶ 75 ("Defendants have improperly and
unlawfully gained the opportunities of DAG and its shareholders").  Plaintiffs do not dispute
Defendants' contention that these fifteen Counts should be construed as a single Count for
unlawful usurpation of corporate opportunity.

Federal courts have the discretion to construe complaints liberally to interpret claims as stating the most appropriate cause of action based upon the supporting allegations.  See Mitchell v. Walters, 2010 WL 3614210, *7 (D.N.J. Sept. 8, 2010) (construing claim for violation of "Deceptive Trade Practices Act" as claim under the New Jersey Consumer Fraud Act (NJCFA), and finding that the plaintiff failed to state a claim under the NJCFA).  Furthermore, duplicative claims may be construed as a single claim in the interest of judicial economy.  See, e.g., East Orange Bd. of Ed. v. E.M., 2011 WL 601327, *7 (D.N.J. Feb. 17, 2011) (resolving summary judgment motion as to all claims in plaintiff's Complaint, since "all other claims and requested relief are duplicative and therefore subsumed within [plaintiff's Individuals with Disabilities Education Act] claim").  In light of the substantial similarities in both word and substance between the above fifteen Counts in Plaintiff's Second Amended Complaint, the Court finds these Counts to be duplicative and subsumed within Plaintiff's claim for unlawful usurpation of corporate opportunity.

### C.  Usurpation of Corporate Opportunity

Defendants argue that they are entitled to summary judgment as to Plaintiffs' claim for usurpation of a corporate opportunity because Plaintiffs have failed to adduce any evidence demonstrating that DAG was able to avail itself of the corporate opportunity.[3]  Defs' Reply br. at 7-9.  Under New Jersey law, "it is clear . . . that a finding of 'corporate opportunity' will be denied . . . (b) where the company is unable to avail itself of the opportunity."  Solimine v. Hollander, 16 A.2d 203, 215 (N.J. Ch. 1940) (citing Loft, Inc., v. Guth, 2 A.2d 225, 239 (Del. Ch. 1938)).

---

[3] Defendants do not move for summary judgment as to Counts VIII (Accounting), IX (Enforcement of Contractual Rights of Share Distribution), and XVII (Declaratory Judgment with Respect to Corporate Indemnification Provisions) of the Second Amended Complaint.

The Court finds that based on Defendants' sworn exhibits, and the parties' sworn deposition testimony, there are no genuine issues of material fact as to Defendants' contention that DAG was unable to undertake the allegedly usurped business opportunity with Comcast. Defendants cite to Plaintiff Egersheim's deposition, in which Egersheim admitted that there was no evidence to refute the statement that DAG had less than $5,000.00 in its bank accounts as of July 2005.  Egersheim Tr. 194:11-197:17.  Egersheim further admitted that for DAG to produce Kidd Hero in the summer of 2005, it would have cost DAG "millions" of dollars, money that DAG concededly did not possess.  Id. 193:2-8.  These two statements, combined, constitute party admissions that DAG was unable to avail itself of the corporate opportunity with Comcast during the relevant time period in the spring and summer of 2005.

In addition to Defendants' showing regarding DAG's financial inability to pursue the allegedly usurped business opportunity with Comcast, Defendants have produced authenticated and undisputed evidence that DAG did not have personnel with the necessary television production skills required to secure the business opportunity presented by Comcast in 2005. Gaud Aff. ¶ 14.  Furthermore, the evidence demonstrates that the joint venture that Remix, LLC, entered into with Comcast is materially different from the alleged business opportunity that DAG had with Comcast in 2005.  Id. ¶ 15.

In light of the above, the Court finds that Plaintiffs have failed to establish the existence of a corporate opportunity to which DAG was able to avail itself.  Therefore, Defendants are entitled to summary judgment on Plaintiff's claim for usurpation of corporate opportunity, which subsumes Counts I-VII, X-XVI, and XVIII of the Second Amended Complaint.

IV.     CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**.

Accordingly, Counts I-VII, X-XVI, and XVIII of the Second Amended Complaint are hereby

**DISMISSED**.  Defendants do not move for summary judgment as to Counts VIII, IX, and XVII

of the Second Amended Complaint, which Counts remain in the Complaint.  An appropriate

Order shall enter today.


Dated:  1/24/2012                                        /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

10